David Clinton HATTON, Petitioner–
Appellant,

v.

Edward BONNER, Respondent–
Appellee.

No. 02–15586.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 2003.

Filed Oct. 8, 2003.

Amended Jan. 27, 2004.

Michael Rothschild and M. Bradley Wishek, Rothschild, Wishek & Sands, Sacramento, CA, for the petitioner-appellant.

Janet E. Neeley, Deputy Attorney General, State of California, Sacramento, CA, for the respondent-appellee.

Before GRABER, WARDLAW, and BYBEE, Circuit Judges.

ORDER AMENDING OPINION AND DENYING PETITION FOR RE-HEARING AND PETITION FOR REHEARING EN BANC AND AMENDED OPINION

**ORDER**

The opinion filed October 8, 2003, slip opinion at 14955 and published at 346 F.3d 938 (9th Cir.2003), is amended by the opinion filed concurrently with this order. With these amendments, the panel has voted to deny the petition for rehearing and petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on it.

The petition for rehearing and petition for rehearing en banc are DENIED. No

further petitions for rehearing or rehearing en banc may be filed.

## OPINION

GRABER, Circuit Judge:

We are called on to decide whether the state court's decision, upholding the application of California's sex-offender registration statute to Petitioner David Hatton, involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. Because we answer that question "no," we must affirm the district court's denial of habeas corpus relief.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1981, Petitioner was convicted of assault with intent to commit oral copulation, in violation of California Penal Code § 220. He was sentenced to a four-year prison term and was released in 1983.

A. *California's Sex–Offender Registration Statute*

California's sex-offender registration statute requires persons convicted of various sex offenses to register with local law enforcement authorities. Cal.Penal Code §§ 290, 290.01. As of 1983, assault with intent to commit oral copulation under California Penal Code § 220 was not among the offenses requiring registration.[1] After the California Court of Appeal pointed out this inexplicable omission in *People v. Saunders*, 232 Cal.App.3d 1592, 284 Cal. Rptr. 212, 215 (1991), the California legislature amended § 290 to add assault with intent to commit oral copulation to the list of offenses requiring registration. 1992 Cal. Legis. Serv. ch. 197, § 1 (A.B.2297)

(West); 1993 Cal. Legis. Serv. ch. 555 (A.B.191) (West).

In 1996, the California legislature significantly amended the registration law by adding public notification provisions. The 1996 amendments authorized limited public release of information about registered offenders whom law enforcement officials consider a threat to the public. 1996 Cal. Legis. Serv. ch. 908, § 2(m)-(p) (A.B.1562) (West) (now codified at Cal.Penal Code § 290.45).

B. *Petitioner's Registration History*

Although assault with intent to commit oral copulation was not added to the list of offenses requiring registration under § 290 until 1993, shortly before his release in 1983, Petitioner was presented with a document informing him that he had to register as a sex offender. The document was entitled "NOTICE OF FELONY REGISTRATION REQUIREMENT" and, under the heading "Probation or Parole—Specify Conditions Requiring Registration," it stated that Petitioner was "REQUIRED TO REGISTER UNDER SECTION 290 P[ENAL] C[ODE]." Petitioner signed his name under an acknowledgment of the duty to register, which stated:

> I understand that as a result of the conviction and/or commitment described herein *I am required to register immediately* or within 30 days of coming into any OTHER city, county, or city and county of California with the chief of police of the city, or the sheriff of the county, if unincorporated area, in which I reside or am temporarily domiciled for

---

1. Assault with intent to commit oral copulation was added to § 220 in 1979. Previously, § 220 had proscribed only assault with intent to commit rape, sodomy (which, until 1975, was termed "the infamous crime against nature"), or mayhem. As of 1983, § 290 re-

quired registration only for the first two of the three original § 220 offenses—i.e., assault with intent to commit *rape* or *sodomy*. Assault with intent to commit *oral copulation*, although added to § 220, had not been added to the § 290 registration statute.

such length of time. *Upon changing my residence address I understand that I shall inform in writing, within 10 days, the law enforcement agency with which I last registered of my new residence address.* I ACKNOWLEDGE RECEIPT OF A COPY OF THIS FORM.

(Emphasis added.)

On July 29, 1983, thirteen days after his release on parole, Petitioner completed the registration form required by § 290. In the box titled "PROBATION OR PAROLE—FOR THIS OFFENSE SPECIFY CONDITIONS REQUIRING REGISTRATION," the word "Register" was typewritten. However, the registration form also provided, in fine print near the bottom:

WHO MUST REGISTER 290 P.C.: Any person determined to be a mentally disordered sex offender or convicted under any of the following statutes: *Penal Code Sections 220 (Assault with intent to commit rape or infamous crime against nature),* 266, 267, 268, 285, 286, 288, 288a, 647a.1, 261.2. 261.3, 647(a), 647(d), 314.1, 314.2 and 272 (if offense involved lewd and lascivious conduct).

(Emphasis added.) Thus, this portion of the registration form correctly reflected that § 290's registration requirement applied to only two of the four offenses then included in § 220—that is, assault with intent to commit rape or sodomy, but *not* assault with intent to commit oral copulation.

Yet, despite this information in fine print, Petitioner re-registered on November 9, 1983, and again on March 6, 1985, when he changed his address. Records of the California Department of Justice show that the Department's last contact with Petitioner was in 1994, when it received notification that Petitioner was moving to Texas.

In the fall of 1996, Petitioner returned from Texas to Placer County, California.

On February 14, 1997, county sheriff's deputies went to Petitioner's residence to investigate his possible involvement in a suspicious incident. As a result of this visit and a further investigation, the deputies learned that Petitioner had moved to Placer County between October and December 1996. The Placer County Sheriff's Department determined that Petitioner had failed to re-register as a sex offender upon his return to California, and they therefore charged him with violating § 290.

### C. *Procedural History of the Present Conviction*

Petitioner was convicted. He appealed, raising the ex post facto and due process claims that he brings before us. His conviction was affirmed by the California Court of Appeal, and his petition for review was denied without comment by the California Supreme Court.

Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of California. The district court denied the petition but issued a certificate of appealability. This timely appeal followed.

### STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a petition for writ of habeas corpus unless the state court's adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 1173–74, 155 L.Ed.2d 144 (2003) (discussing "clearly established Federal law" prong of statutory standard).

We review de novo a district court's denial of a habeas corpus petition. *Bribiesca v. Galaza,* 215 F.3d 1015, 1018 (9th Cir.2000).

## DISCUSSION

The offense of which Petitioner was convicted in 1981 was not included in the list of offenses for which § 290 mandated registration until 1993. Petitioner makes two arguments based on that sequence of events.

First, he argues that § 290, as applied to him, violates the Ex Post Facto Clause. U.S. Const. art. I, § 9, cl. 3. He asserts that, when the California legislature amended § 290 in 1993 to include assault with intent to commit oral copulation, the legislature retroactively increased the punishment for his 1981 conviction.

Second, Petitioner argues that § 290 violates the Due Process Clause as applied to him. U.S. Const. amend. XIV, § 1. Specifically, he contends that he received insufficient notice of the need to register because fine print on the registration form excluded his offense from the list of crimes to which § 290 applied.

The California Court of Appeal found neither of Petitioner's arguments persuasive. We will consider each argument in turn and measure it against the AEDPA standard.

### A. *Ex Post Facto Clause*

The United States Supreme Court recently upheld Alaska's sex-offender registration statute against an ex post facto claim. *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). Under *Smith,* we must undertake a two-step analysis to determine whether § 290 consti-

tutes retroactive punishment forbidden by the Ex Post Facto Clause. *Id.* at 1146–47; *see also Young v. Weston,* 344 F.3d 973, 977 (9th Cir.2003) (applying two-step test under civil commitment statute); *Russell v. Gregoire,* 124 F.3d 1079, 1086–87 (9th Cir.1997) (evaluating Washington's sex-offender registration statute using the same two-part analysis).

First, we must decide whether the intent of the California legislature in enacting § 290 was to impose punishment on sex offenders. *See Smith,* 123 S.Ct. at 1146–47. If the answer is "yes," our analysis ends because retroactive application of the statute would constitute an ex post facto violation. *Id.* at 1147.

If, however, the intent of the California legislature was to enact a nonpunitive and civil regulatory regime, we move to the second step of the analysis to decide whether §·290 is "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id.* (internal quotation marks omitted); *see also Young,* 344 F.3d at 976 (asking whether the statutory scheme is "so punitive in purpose or effect that it negates" Congress' intent that it be civil); *Russell,* 124 F.3d at 1087 (asking whether "the sanction is 'so punitive' in effect as to prevent the court from legitimately viewing it as regulatory or civil in nature, despite the legislature's intent"). Under this second step, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith,* 123 S.Ct. at 1147 (internal quotation marks omitted).

### 1. *Legislative Intent Behind § 290*

Considerable evidence suggests that the legislative intent behind § 290 was nonpunitive. With respect to the 1996 amendments, which added public notification provisions to § 290, the California leg-

islature stated: "To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of sex offenders...." 1996 Cal. Legis. Serv. ch. 908, § 1(f) (A.B. 1562) (West). The legislature also declared that "[t]he registration of sex offenders ... will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems that deal with these offenders." *Id.* § 1(e). Such statements by the legislature suggest a regulatory, rather than punitive, purpose.

Additionally, the California legislature stated: "The Legislature also declares ... that in making information available about certain sex offenders to the public, it does not intend that the information be used to inflict retribution or additional punishment...." *Id.* § 1(g) (setting out the preamble to the 1996 amendments to California Penal Code §§ 290, 290.4). Further, the legislature stated that "[t]his policy of authorizing the release of necessary and relevant information about serious and high-risk sex offenders to members of the general public is a means of assuring public protection and shall not be construed as punitive." *Id.* § 1(f). As the district court noted, the 1996 notification provisions flowed naturally and logically from the existing registration provisions, which suggests that the legislature's intent in enacting the notification provisions paralleled its prior intent in enacting the registration provisions. That is, if the notification provisions were nonpunitive, the registration provisions from which they arose must also have been nonpunitive.

Further supporting a nonpunitive interpretation of the legislature's intent, the California Supreme Court has stated that § 290 was enacted to serve a regulatory purpose. In *People v. Castellanos*, 21 Cal.4th 785, 88 Cal.Rptr.2d 346, 982 P.2d 211, 217 (1999), the court wrote: "The sex

offender registration requirement serves an important and proper remedial purpose, and it does not appear that the Legislature intended the registration requirement to constitute punishment." *See also Wright v. Superior Court*, 15 Cal.4th 521, 63 Cal. Rptr.2d 322, 936 P.2d 101, 105 (1997) (finding that § 290 is "regulatory in nature").

However, the statements of the state's legislature and supreme court are not the only factors indicative of the purpose of the statute. The structure of the statute also is probative of legislative intent. *Smith*, 123 S.Ct. at 1148. Particularly relevant is whether § 290 is codified in the state's criminal code. *Id.*

Although California has a Health and Safety Code, § 290 is codified in the California Penal Code. The penal code is divided into five parts: (1) Of Crimes and Punishments, (2) Of Criminal Procedure, (3) Of Imprisonment and the Death Penalty, (4) Prevention of Crimes and Apprehension of Criminals, and (5) Peace Officers' Memorial. Section 290 is codified in Part 1, "Of Crimes and Punishments." Petitioner argues that, if the California legislature had intended the sex-offender registration statute to serve a nonpunitive purpose, it would have codified § 290 in the Health and Safety Code or in one of the other parts of the penal code, such as Part 4, "Prevention of Crimes and Apprehension of Criminals." There is a more plausible explanation for the placement of § 290 in the "Of Crimes and Punishments" section of the California Penal Code, however. Section 290 is a multifaceted statutory provision. Not only does it set forth the details of the sex-offender registration requirements, but it also sets forth the penalties for noncompliance with them. *See, e.g.,* Cal.Penal Code § 290(g)-(h). Thus, although the registration requirements of § 290 have a nonpunitive purpose, failure to abide by those requirements is a crime,

and the punishment for that crime is laid out in § 290. Because § 290 is, in part, a criminal statute, it makes sense that the legislature chose to codify it in the criminal code.

Even more important, in *Smith* the Supreme Court was careful to note that "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Smith*, 123 S.Ct. at 1148; *see also id.* at 1148–49 (finding the Alaska registration statute's provisions to be nonpunitive even though they were codified in the state's criminal procedure code instead of the "Health, Safety, and Housing Code").[2] Instead, the fact that a statute is codified in the criminal code must be weighed against other indicia of legislative intent.

When balanced against the other factors discussed above, the fact that § 290 is codified in the penal code is not controlling. The state court reasonably concluded that the legislature's intent was not punitive. The statute, therefore, does not run afoul of the Ex Post Facto Clause unless Petitioner can demonstrate through "the clearest proof" that § 290 is "so punitive either in purpose or effect as to negate[the State's] intention to deem it civil." *Smith*, 123 S.Ct. at 1147.

### 2. *Effect of § 290*

■ The Supreme Court in *Smith* held that, in analyzing the effect of sex-offender registration statutes, it is helpful for reviewing courts to refer to the seven factors set forth in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *Smith*, 123 S.Ct. at 1149. Those factors are (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has historically been regarded as a punishment; (3) whether the sanction comes into play only on a finding of scienter; (4) whether the sanction's operation will promote the traditional aims of punishment— retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which the sanction rationally may be connected is assignable to it; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Mendoza–Martinez*, 372 U.S. at 168–69, 83 S.Ct. 554.

#### a. *Affirmative Disability or Restraint*

■ To learn whether § 290 imposes an affirmative disability or restraint, we "inquire how the effects of the [statute] are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith*, 123 S.Ct. at 1151.

■ Section 290 imposes no physical restraint and, therefore, does not resemble imprisonment, "the paradigmatic affirmative disability or restraint." *Id.* Further, § 290's obligations are less harsh than the sanction of occupational debarment, which the Supreme Court has held to be nonpunitive. *See id.* (citing cases). Finally, § 290 does not restrain the activities that sex offenders may pursue, and it leaves them free to change jobs or residences. *See id.*

In fact, because the notification provisions of the California statute are more protective of Petitioner's privacy than those of the Alaska statute upheld in *Smith*, § 290 constitutes even less of an affirmative disability or restraint. Alaska allows the information collected pursuant

2. Although *Russell v. Gregoire*, 124 F.3d 1079, 1087–88, 1090 (9th Cir.1997), did not consider the placement of the Washington registration and notification provisions in the criminal rather than the civil code, it held that their text and structure revealed a regulatory rather than punitive purpose.

to its registration scheme to be posted on the Internet, where anyone has access to it. The registrants in *Smith* asserted that the disclosure provisions made them unemployable, because a potential employer would not wish to risk losing business if the public learned that the employer had hired a sex offender. *Smith*, 123 S.Ct. at 1151. By contrast, § 290 does not allow dissemination of registration information on the Internet, nor does it allow dissemination of information about registrants' employers.[3] *See* Cal.Penal Code §§ 290.01(d)(1)(A), 290.4(a), 290.45(a)(4).

Unlike other states that post their entire registries on Internet websites, California limits the circumstances in which law enforcement agencies may disseminate information from the registry, *id.* § 290.45, and regulates public inquiries to the registry, *id.* § 290.4. Agencies may disseminate certain information about serious offenders only when they reasonably suspect that an offender poses a risk, and only to institutions and community members that are likely to be at risk.[4] *Id.* § 290.45(a).

California allows public inquires to the registry in only two ways: through toll calls to a telephone number or in person at a local police station. *See id.* § 290.4(a)(3)-(4). The California statute requires members of the public to satisfy certain conditions in order to obtain access, and it restricts what information will be released to members of the public. *See id.* It also enumerates impermissible uses of the registry information, such as using it to decide whether to grant the registrant employment, housing, credit, and insurance. *See*

*id.* § 290.4(e)(2). It sets penalties for misuse of the information, *id.* § 290.4(e)(3), and requires the California Department of Justice to submit annual reports to the legislature detailing the extent of public use of the registry, *id.* § 290.4(*l*)-(m). Further evidence that the legislature pays close attention to this provision is its expiration dates. The legislature set prior versions of § 290.4 to expire in 1999, 2001, and 2004 and each time amended and renewed them. 1997 Cal. Legis. Serv. ch. 821, §§ 4.3(m), 4.4(m), 4.6(m), 4.7(m) (A.B. 290) (West); 2000 Cal. Legis. Serv. ch. 648, § 2(n) (A.B.1340) (West); 2003 Cal. Legis. Serv. ch. 634, § 3(o) (A.B.1313) (West). The current provision is operative until January 1, 2007. Cal.Penal Code § 290.4(o).

Petitioner argues that the periodic updates required under § 290 serve as an affirmative disability or restraint. However, as the Court in *Smith* concluded, "registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause." 123 S.Ct. at 1152. It is true that, unlike the Alaska statute, § 290 requires Petitioner to register in person. Although this fact is important, when balanced against the other facts highlighted above, it is simply not enough to turn § 290 into an affirmative disability or restraint. Thus, this factor weighs in favor of the state court's conclusion that application of § 290 to Petitioner does not violate the Ex Post Facto Clause.

---

3. An exception is made for registrants who are employed by a university, college, community college, or other institution of higher learning. Cal.Penal Code § 290.45(a)(4)(O).

4. Agencies are authorized to make broader releases of information about serious offenders who qualify as "high-risk" by reason of multiple convictions or adjudication as "sexu-

ally violent predators." § 290.45(b). Also, pursuant to a 2003 amendment enacted to comply with federal requirements, college and university police departments may disseminate limited information about *any* registered offender—not merely serious and high-risk offenders—to the entire campus community. § 290.01(d).

b. *Historical Meaning*

Sex-offender registration laws are a relatively recent phenomenon, so it cannot be said that they have historically been viewed as a form of punishment. *Smith*, 123 S.Ct. at 1149. Further, in *Smith*, the Supreme Court held that such statutes do not resemble the shaming punishments of the colonial period. *Id.* at 1150; *see also Russell*, 124 F.3d at 1091–92.

■ We find no evidence that an objective of § 290 is to shame, ridicule, or stigmatize sex offenders. In fact, the dissemination of registration information is limited under § 290 and, therefore, the statute is less humiliating than the Alaska statute upheld in *Smith*. In short, the second *Mendoza–Martinez* factor weighs in favor of the state court's conclusion.

c. *Scienter*

■ The third relevant factor is whether the registration requirement comes into play *only* on a finding of scienter. *Mendoza–Martinez*, 372 U.S. at 168–69, 83 S.Ct. 554. The reporting requirement of § 290 applies to "any person who has been found guilty in the guilt phase of a trial for an offense for which registration is required by this section but who has been found not guilty by reason of insanity in the sanity phase of the trial." Cal.Penal Code § 290(a)(2)(C). Accordingly, the registration requirement is not triggered *only* on a finding of scienter, and this factor weighs in favor of the state court's conclusion.

d. *Promotion of the Traditional Aims of Punishment*

The fourth *Mendoza–Martinez* factor requires us to analyze whether § 290 promotes the traditional aims of punishment, namely, deterrence and retribution. *Mendoza–Martinez*, 372 U.S. at 168–69, 83 S.Ct. 554.

■ It is possible that sex-offender registration statutes deter persons who would otherwise commit a crime that would require them to register as a sex offender. Nonetheless, this observation does not negate the overall remedial and regulatory nature of § 290. As the Supreme Court has noted, "[a]ny number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions criminal ... would severely undermine the Government's ability to engage in effective regulation." *Smith*, 123 S.Ct. at 1152 (internal quotation marks omitted); *see also Russell*, 124 F.3d at 1089 ("Although registration arguably has a deterrent effect, ... deterrence can serve both civil and criminal goals.").

*Smith* rejected the argument that Alaska's sex-offender registration statute was retributive because it tied the length of the reporting requirement to the extent of the registrant's wrongdoing. 123 S.Ct. at 1152. Here, the state court reasonably drew the same conclusion with respect to § 290. Further, as noted above, the California legislature has explicitly disavowed any intent to make the statute retributive: "The Legislature also declares ... that in making information available about certain sex offenders to the public, it does not intend that the information be used to inflict retribution or additional punishment...." 1996 Cal. Legis. Serv. ch. 908, § 1(g) (A.B.1562) (West).

Thus, although the registration requirement is triggered by a conviction for certain sex offenses, it is not intended to serve as punishment for that conviction. This factor, too, supports the state court's holding.

e. *Application to Behavior Already Criminalized*

■ The reporting requirement of § 290 applies to behavior that is already

criminalized under California law. *See Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. 554. However, the requirement also applies to "[a]ny person who ... is determined to be a mentally disordered sex offender under Article 1 (commencing with Section 6300) of Chapter 2 of Part 2 of Division 6 of the Welfare and Institutions Code." Cal.Penal Code § 290(a)(2)(C). Section 6300 of the Welfare and Institutions Code, now repealed, defined "mentally disordered sex offender" as "any person who by reason of mental defect, disease, or disorder, is predisposed to the commission of sexual offenses to such a degree that he is dangerous to the health and safety of others." Cal. Welf. & Inst.Code § 6300 (repealed).

Unlike Alaska's sex-offender statute, then, § 290 does not apply only to those persons who have been convicted of a crime. *See* Alaska Stat. § 12.63.100(5). In this way, § 290 is more similar to the Washington statute that we upheld several years ago. *See Russell,* 124 F.3d at 1091 (noting that "[s]ome persons who have not been convicted of a sex offense may be subject to notification—those incompetent to stand trial, or committed as sexual psychopaths or sexually violent predators, for example"). Thus, the fifth *Mendoza–Martinez* factor also supports the state court's holding.

### f. *Rational Connection to a Nonpunitive Purpose*

In *Smith,* the Supreme Court held that "a most significant factor" in the *Mendoza–Martinez* analysis is whether the challenged sanction is rationally connected to a purpose other than punishment. *Smith,* 123 S.Ct. at 1152 (internal quotation marks omitted). The Court concluded that sex-offender registration statutes have "a legitimate nonpunitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community." *Id.* (internal quotation marks omitted).

It is clear that § 290, too, bears a rational connection to the nonpunitive purpose of public safety. Even Petitioner concedes this point. Thus, this "significant" factor clearly weighs in favor of the state court's decision.

### g. *Excessiveness of Sanction in Relation to Nonpunitive Purpose*

"A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Smith,* 123 S.Ct. at 1152. Instead, the question is "whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Id.* at 1154.

Like the statute upheld in *Smith,* § 290 is not excessive in the light of its reasonable nonpunitive objective. As discussed above, § 290's notification provisions are actually *less* burdensome on Petitioner because they limit both the type of information that may be released and the manner in which it may be released. Although § 290 requires Petitioner to register in person, this requirement is reasonable because it provides a means of confirming that the information provided about Petitioner's physical appearance is accurate.

Petitioner's complaint that, for certain "relatively innocuous offenses," § 290 is an excessive sanction is also unpersuasive. In *Smith,* the Supreme Court upheld the Alaska statute that applied to all convicted sex offenders and declared that a state may reasonably legislate with respect to convicted sex offenders as a class. *Id.* at 1152–53.

Section 290 is reasonable in the light of the public-safety purpose of California's sex-offender registration scheme. Accordingly, this factor, too, favors the state court's resolution of the matter.

h. *Conclusion*

 When we examine the seven *Mendoza–Martinez* factors, Petitioner cannot demonstrate through "the clearest proof" that § 290 is "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Smith*, 123 S.Ct. at 1147 (internal quotation marks omitted). Every factor supports the state court's holding. Thus, Petitioner's ex post facto claim must fail.

## B. *Due Process Clause*

Petitioner argues that, because the fine print in the "Notice of Felony Registration Requirement" that he signed shortly before being released from prison actually notified him that he had no duty to register, he cannot—consistent with the requirements of due process—be convicted of failing to register. In the peculiar circumstances of this case, we conclude that the state court did not violate the AEDPA standard when it rejected Petitioner's due process argument.

In *Lambert v. California*, 355 U.S. 225, 226, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), the Supreme Court analyzed a city ordinance that made it unlawful for a convicted felon to remain in the city for five days or to enter the city more than five times during a thirty-day period unless the felon registered with the chief of police. Virginia Lambert was arrested on suspicion of another offense and charged with violation of the registration law. *Id.* Before the Supreme Court, she argued that the ordinance deprived her of due process of law. *Id.* at 227, 78 S.Ct. 240. The Court agreed. *Id.*

No element of willfulness was included in the ordinance, and no California court had read such an element into the ordinance as a condition necessary for conviction. *Id.* Further, the Supreme Court was required to assume that Lambert had no actual knowledge of the registration requirement, because the trial court had refused her offer of proof as to that defense. *Id.*

The Supreme Court noted that the ordinance was "entirely different" from other registration laws in that "[v]iolation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking." *Id.* at 229, 78 S.Ct. 240. The Court then held that the statute was unconstitutional because, in the absence of "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply," a person "may not be convicted consistently with due process." *Id.* at 229–30, 78 S.Ct. 240.

Here, the California Court of Appeal applied *Lambert;* the only questions for us are whether the state court did so unreasonably[5] and whether the state court unreasonably determined the facts in the light of the evidence presented.[6] We think it did neither.

 The California court quoted *Lambert's* holding that " 'actual knowledge of the duty to register *or proof of the probability of such knowledge* and subsequent failure to comply are necessary before a conviction under the ordinance can stand.' " (Quoting, with emphasis, *Lam-*

---

5. *But see Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam) (holding that a state court need not cite United States Supreme Court cases so long as the state court's reasoning and result do not contradict Supreme Court precedent).

6. Because Petitioner expressly disavows any intent to make a procedural due process argument, the recent decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160, 1164–65, 155 L.Ed.2d 98 (2003), has no application here.

*bert,* 355 U.S. at 229, 78 S.Ct. 240.) The court then went on to explain why that standard was satisfied with respect to Petitioner:

> *Lambert's* fact situation is markedly distinguishable from Hatton's. Unlike the defendant in *Lambert, Hatton offered no proof that he was unaware of his duty to register.* On the contrary, all of the evidence in this case supports the inference that Hatton knew perfectly well that he had such a duty. Unlike the defendant in *Lambert,* Hatton was given explicit written notice of and signed an acknowledgment that he had a duty to register under section 290. Hatton's conduct post-release from prison was totally consistent with such awareness, as he continually registered until moving to Texas in 1994.[7] There is no suggestion that Hatton lacked notice that convicted sex offenders such as himself were required to re-register upon resuming residence in California.

In response to Petitioner's argument that the fine-print list at the bottom of the registration form served to inform him affirmatively that he did not need to register, the California Court of Appeal said:

> Hatton's repeated assertion that the notice he signed upon his release from prison in 1983 actually informed him that "he had no duty to register" can only be embraced by engaging in a wild departure from common sense. Hatton points to a fine print boilerplate paragraph on a 1983 Department of Justice form bearing the caption "WHO MUST REGISTER 290 PC" which recites a list of sex crimes, none of which included assault with intent to commit oral copulation. His argument requires us to assume, without supporting evidence, that Hatton not only read the boilerplate, but applied the doctrine of expressio unius

est exclusio alterius to conclude that he had no duty to register, despite the fact that same form was entitled "Notice of Felony Registration Requirement" and told him in no uncertain terms that he *did have* a duty to register.... The notion is nonsensical. There is nothing in the record showing Hatton read, much less relied, upon the fine print boilerplate.

The California Court of Appeal concluded that "[s]ince there was substantial, indeed uncontradicted, 'proof of the probability of knowledge' by Hatton that he had a duty to register at the time of his arrest, *Lambert* lends no succor to Hatton's due process claim."

Petitioner makes the same due process argument here that he did before the state court. As did the state court, we note that Petitioner presented no evidence of a lack of actual knowledge of the registration requirement. For instance, he did not aver that he read the fine print at the bottom of the form, understood it to mean that he was not required to register, or relied on such an understanding conveyed to him by some other person. Further, the fact that Petitioner repeatedly continued to register until he moved to Texas is a powerful refutation of his reasoning. Nor did Petitioner aver that he lacked notice that convicted sex offenders were required to re-register upon resuming residence in California. Thus, the California Court of Appeal did not determine the facts unreasonably, 28 U.S.C. § 2254(d)(2), nor did it unreasonably apply clearly established federal law, *id.* § 2254(d)(1).

AFFIRMED.

---

7. Petitioner moved to Texas in 1985, the last year in which he registered as a sex offender in California. The California Superior Court corrected the record to reflect this fact.