**William Louis BARTLETT, Petitioner–Appellant,**

v.

**E.S. ALAMEIDA, Jr.; W.A. Duncan, Warden, Respondents–Appellees.**

No. 03–55936.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 1, 2004.

Filed May 10, 2004.

Barbara Michel, Berkeley, CA, for the petitioner-appellant.

Karen Bissonnette, Deputy Attorney General, Los Angeles, CA, for the respondents-appellees.

Before SKOPIL, JR., NOONAN, and BERZON, Circuit Judges.

PER CURIAM.

William Louis Bartlett is a state prisoner serving a 25–year–to–life sentence for failing to re-register as a sex offender pursuant to California's sex offender registration statute, Cal. Pen.Code § 290(a)(1)(A). He contends, in his quest for a writ of habeas corpus, that his conviction violates due process because the state

was not required to prove that he had knowledge of the lifelong duty to register. The district court denied Bartlett's petition. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we reverse and remand.

## I.

William Bartlett was convicted of rape in California in 1983 and incarcerated. When paroled in 1986, he signed a form acknowledging that he had a lifelong duty to register as a sex offender in California. In the next four years, Bartlett repeatedly violated his parole and was returned to prison five times. Bartlett registered as a sex offender when he was released from prison in 1987 and again in 1990 when he was released. By 1990, Bartlett had signed three forms, each indicating that his duty to register as a sexual offender was a lifelong requirement, and he had duly registered twice as a sex offender. After 1990, however, he never again registered as a sex-offender.

Bartlett was convicted of robbery and commercial burglary in 1992 and sentenced to prison for 11 years. While in prison and again when paroled in 1997, Bartlett signed forms acknowledging that his "responsibility to register as a sexual offender is a lifetime requirement." When Bartlett once again violated his parole, he was returned to prison. When released in 1998, Bartlett signed another notice of duty to register. He did not register as a sex offender after his release. Rather, he was eventually discovered by authorities residing in a convalescent home under an assumed name.

Bartlett was charged with a violation of § 290(a)(1)(A), providing that "[e]very person [convicted of a sexual offense as] described in paragraph (2), for the rest of his or her life while residing in . . . California, . . . shall be required to register with the chief of police of the city in which he or she is residing . . . ." Bartlett admitted at his trial that he signed the registration requirement forms and registered as a sex offender while on parole for the sex offense, but contended that he was unaware that his duty to register was lifelong. He testified that he believed that his obligation to register as a sex offender ended when his parole for that offense expired. Bartlett explained to the jury that he did not read any of the registration notices because they were presented to him along with a number of other documents when he was being processed out of custody. He further testified that he began living under an assumed name because he knew he had violated his parole on the robbery and burglary convictions and was afraid to return to prison.

The court instructed the jury that "[i]t is not an element of the offense that the convicted sex offender have actual or probable knowledge of his duty to register. The convicted sex offender need only have been given actual notice of the requirement to register as a sex offender." During deliberations, the jury became deadlocked and sent the court a note requesting that the court elaborate on the meaning of "willfully" in the jury instructions. In response, the court reiterated that "actual knowledge is not an element of the crime. Actual notice is an element of the crime. You must be given notice. Actual knowledge is not an element of the crime. The people don't have to prove actual knowledge beyond a reasonable doubt."

Bartlett was convicted of failing to register as a sex offender in violation of § 290. Because this conviction was his "third strike," Bartlett was sentenced to a term of 25 years to life in prison. His conviction was upheld by the California Court of Appeal. That court reasoned that "actual knowledge is not an element of the offense

of failing to register as a sexual offender." The court also noted that even if federal due process requires proof of actual knowledge, Bartlett's "repeated actual notice of the registration requirement supplies proof of the probability of actual knowledge." The California Supreme Court denied Bartlett's petition for review. A few months later, however, the California Supreme Court held, in a different case, that the state must prove as an element of the crime that a defendant had "actual knowledge" of the duty to register under § 290. *People v. Garcia*, 25 Cal.4th 744, 752, 107 Cal.Rptr.2d 355, 23 P.3d 590 (2001) (noting that making actual knowledge of the duty to register an element of a § 290 violation "undoubtedly" satisfies federal due process).

Bartlett subsequently filed this petition for habeas corpus relief in the district court. The district court denied relief, holding that any federal due process requirement is satisfied by "proof of the probability" of actual knowledge—supplied in this instance by Bartlett's "repeated actual notice of the registration requirement." *Bartlett v. Duncan*, 262 F.Supp.2d 1053, 1060 (C.D.Cal.2003).

## II.

■ Our review is de novo. *See Forn v. Hornung*, 343 F.3d 990, 994 (9th Cir. 2003) (noting that denial of a petition for habeas corpus under 28 U.S.C. § 2254 is reviewed de novo). Our review is nonetheless limited by provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.), *cert. denied*, — U.S. —, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003). Under the AEDPA, a writ of habeas corpus cannot be granted unless the state court proceedings"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d). A state court's decision is contrary to federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court case authority" or "applies controlling law to a set of facts that is materially indistinguishable from a Supreme Court decision but nevertheless reaches a different result." *Riley v. Payne*, 352 F.3d 1313, 1317 (9th Cir.2003) (internal quotations omitted). A state court's decision is an "unreasonable application of federal law if the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." *Clark*, 331 F.3d at 1067 (internal quotation omitted).

## III.

■ The California Court of Appeal's opinion, the last reasoned state court decision in this case, identified and applied the relevant Supreme Court authority—*Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). Thus, the only question remaining is "whether the state court did so unreasonably...." *See Hatton v. Bonner*, 356 F.3d 955, 967 (9th Cir.2004) (reviewing application of *Lambert* to § 290).

In *Lambert*, the Supreme Court considered whether a provision of the Los Angeles Municipal Code, imposing criminal penalties upon convicted felons who remain in Los Angeles for more than five days and who fail to register with the chief of police, was unconstitutional as applied to a person who had "no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge." *Lambert*, 355 U.S. at 227, 78 S.Ct. 240. The court reasoned that when such "a

person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process." *Id.* at 229–30, 78 S.Ct. 240. Here, the state court of appeal acknowledged *Lambert's* holding, but concluded the case was distinguishable because of the "overwhelming evidence" that Bartlett "was given actual notice of his life-long duty to register."

We conclude that such an application of *Lambert* to this case is objectively unreasonable. *Lambert* requires proof that a defendant knew of the duty to register. The state may, of course, prove knowledge through circumstantial evidence such as signed registration forms and prior registration. Such circumstantial evidence may constitute "proof of the probability of such knowledge." *Lambert*, 355 U.S. at 229, 78 S.Ct. 240. But Bartlett is also entitled to present evidence that he did not read the forms, or did not comprehend them, or misinterpreted the requirements. If the jurors believed Bartlett's testimony that he was thus unaware that his duty to register was lifelong, they were required, consistent with *Lambert*, to acquit him. The state judge, however, specifically instructed the jurors that Bartlett's actual knowledge was irrelevant and that they could convict Bartlett solely based on evidence of actual notice.

■ A constitutional error discovered on habeas appeal requires reversal of the underlying conviction only if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Both the state court of appeal and the federal district court reasoned that there was ample evidence that Bartlett received actual notice, thereby supplying the requisite actual knowledge

sufficient to satisfy the due process requirements of *Lambert*. *See Bartlett*, 262 F.Supp.2d. at 1060 (citing and approving state court's conclusion). We disagree. As noted above, the jurors, during deliberation, sent a note to the court declaring they were deadlocked. In an effort to break the deadlock, the jury asked the court to elaborate on the meaning of "willfully" as it was used in the jury instructions. In response to this inquiry and to an earlier request by the jury to see Bartlett's mandatory release card (apparently to see if the card "had any instructions on the back"), the trial judge thrice instructed the jury that "[a]ctual knowledge is not an element of the crime." The court then reiterated that the state did not have to prove actual knowledge. After this elaboration, the jury returned a guilty verdict. We conclude that the court's repeated misstatement of an element of the crime "had substantial and injurious effect or influence in determining the jury's verdict" because it was apparently the one factor that turned a deadlocked jury—concerned in particular about the actual knowledge/actual notice distinction—into a convicting jury. Therefore, the error was not harmless.

■ Finally, the state contends that we may not impose a new constitutional rule of criminal procedure on collateral review of a state conviction. *See Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Our disposition of this case requires no such new procedural rule. *Lambert* "clearly established the requisite legal principles long ago, and the state court's decision did not reasonably apply them." *Brown v. Poole*, 337 F.3d 1155, 1161 (9th Cir.2003) (enforcing on collateral review due process rights clearly established by prior Supreme Court precedent).

## IV.

*Lambert* required the state to prove that Bartlett knew or probably knew of his lifelong duty to register as a sex offender. The trial court erroneously instructed the jury that actual knowledge was not an element of the crime. Because this error was not harmless, and because the state court of appeal unreasonably determined that no *Lambert* error occurred, the district court erred by not granting Bartlett's petition for writ of habeas corpus. We reverse that decision and remand to the district court with instructions to grant the writ of habeas corpus unless the state grants Bartlett a new trial within sixty days of the issuance of this Court's mandate.

**REVERSED** and **REMANDED.**