# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 18, 2011         Decided August 16, 2011

No. 10-5097

GRANT ANDERSON,
APPELLANT

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED
STATES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01197)

*Catherine H. Curlet*, student counsel, argued the cause as appointed *amicus curiae* in support of appellant. On the briefs was *Erica Hashimoto*, appointed by the Court.

*Grant Anderson*, pro se, filed briefs for appellant.

*Mary L. Wilson*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee District of Columbia. With her on the brief were *Irvin B. Nathan*, Acting Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

*Jane M. Lyons*, Assistant U.S. Attorney, U.S. Attorney's Office, argued the cause for federal appellees. With her on the brief were *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Kenneth A. Adebonojo*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, GARLAND, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: While Grant Anderson was in prison serving time for a violent sexual assault, the District of Columbia enacted the Sex Offender Registration Act (SORA). By its terms, SORA requires Anderson to register as a sex offender and authorizes the police to publicize his status. Anderson challenges SORA under various provisions of the U.S. Constitution, most notably the Ex Post Facto Clause. For the reasons set forth below, we reject his claims.

I

In 1988, a jury convicted Grant Anderson of assault with intent to commit rape while armed; assaulting, resisting, or interfering with a police officer with a dangerous weapon; and two counts of first-degree burglary while armed. He was sentenced to prison for 18 years to life. In 2000, the Council of the District of Columbia passed and the mayor signed into law SORA, D.C. CODE §§ 22-4001 to -4017, a registration and notification law similar to those enacted in each of the fifty states, *see Smith v. Doe*, 538 U.S. 84, 89-90 (2003). SORA requires District residents convicted of certain crimes to register as sex offenders with the Court Services and Offender Supervision Agency (CSOSA), a federal agency that also

administers the District's parole and probation programs. SORA delegated to the agency authority to adopt regulations specifying the information offenders must submit, D.C. CODE § 22-4007(a), the frequency with which they must submit the information, *id.* § 22-4008(a)(1), and whether they must provide updates to CSOSA in person, *id.* § 22-4008(a)(3). A sex offender who knowingly fails to register and keep his information up to date is subject to 180 days' imprisonment and a $1000 fine. *Id.* § 22-4015(a). Repeated failure to comply with the registration requirement may result in five years' imprisonment and a $25,000 fine. *Id.* SORA also requires the Metropolitan Police to maintain a public internet database that provides information about sex offender registrants, *id.* § 22-4011(b)(1)(B), and permits the police to notify the public about the registrants through "community meetings, flyers, telephone calls, door-to-door contacts, electronic notification, direct mailings, and media releases," *id.* § 22-4011(b)(1)(A).

Anderson was released from prison on lifetime parole in January 2009. SORA makes Anderson's offense of assault with intent to commit rape a "lifetime registration offense," *id.* § 22-4001(6)(D), meaning he must register as a sex offender with CSOSA so long as he lives in the District, *id.* § 22-4002(b)(1), and he must also register with the authorities in any other state where he relocates, works, or goes to school, *id.* § 22-4014(5). On June 29, 2009, Anderson, proceeding pro se, sued the United States and the District of Columbia, contending that SORA violates the Ex Post Facto Clause, the Fifth Amendment, the Eighth Amendment, the Equal Protection Clause, and the D.C. Human Rights Act. The district court granted the government's motion to dismiss, holding that Anderson failed to state a claim under federal law, and refusing to exercise supplemental jurisdiction over his claim under the D.C. Human Rights Act. *Anderson v. Holder*,

4

691 F. Supp. 2d 57 (D.D.C. 2010). Anderson appealed, and we appointed an amicus, who ably argued in his support.

II

Because Anderson's conviction occurred before SORA became law, we must consider whether the statute's application to him "constitutes retroactive punishment forbidden by the Ex Post Facto Clause." *Smith*, 538 U.S. at 92. The Supreme Court described the framework that guides our analysis when it examined Alaska's similar statute requiring sex offender registration:

> If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "so punitive either in purpose or effect as to negate [the State's] intention to deem it 'civil.'"

*Id.* (alteration in original) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). We conclude that, like the sex offender registration requirement in *Smith*, SORA's registration requirement does not violate the Ex Post Facto Clause.

A

We are persuaded that the Council intended to create "a regulatory scheme that is civil and nonpunitive." In the first place, the Council drafted SORA to conform to a federal law encouraging states to require sex offender registration, *see* Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act of 1994, Pub. L. No. 103-322, § 170101, 108 Stat. 2038, 2042 (codified as amended

5

at 42 U.S.C. § 14071 (2000)) (conditioning certain federal funding on the states' adoption of sex offender registration laws and setting minimum standards for state programs), *repealed by* Pub. L. No. 109-248, § 129(a), 120 Stat. 587, 600 (2006), and the overwhelming weight of authority treats such laws as civil and nonpunitive, *see, e.g.*, *Smith*, 538 U.S. at 96 (Alaska); *United States v. Hinckley*, 550 F.3d 926, 936 (10th Cir. 2008) (federal registration requirement); *Virsnieks v. Smith*, 521 F.3d 707, 720 (7th Cir. 2008) (Wisconsin); *Houston v. Williams*, 547 F.3d 1357, 1364 (11th Cir. 2008) (Florida); *Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) (Tennessee); *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1017 (8th Cir. 2006) (Arkansas); *Hatton v. Bonner*, 356 F.3d 955, 967 (9th Cir. 2004) (California); *Doe v. Pataki*, 120 F.3d 1263, 1265 (2d Cir. 1997) (New York); *Hayes v. Texas*, 370 F. App'x 508, 509 (5th Cir. 2010) (unpublished) (Texas); *Kirschenhunter v. Sheriff's Office, Beauregard Parish*, 165 F. App'x 362, 363 (5th Cir. 2006) (unpublished) (Louisiana). *But see United States v. Juvenile Male*, 590 F.3d 924, 927 (9th Cir. 2010) (holding that federal registration requirement was an ex post facto law when retroactively applied to those found guilty of sex crimes in juvenile proceedings), *vacated*, 131 S. Ct. 2860 (2011). We see no reason to think that the Council's aim with SORA was different from that of the many other legislatures that have passed similar laws. We note that the D.C. Court of Appeals reached the same conclusion in its appraisal of SORA. In *In re W.M.*, the court thought it the "clear and unequivocal" intention of the Council to impose only a civil and nonpunitive burden. 851 A.2d 431, 441 (D.C. 2004). Though we are "not bound by the D.C. Court of Appeals's interpretation of the Constitution," *Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996), "a federal court should hesitate before disavowing a state supreme court's exposition of the purposes animating a state statute," *Allen v. Att'y Gen. of Me.*, 80 F.3d 569, 575 n.6 (1st Cir. 1996); *see also*

*Seling v. Young*, 531 U.S. 250, 264 (2001) (construing Washington statute as civil in part because Washington Supreme Court had reached the same conclusion); *Hatton*, 356 F.3d at 962 (citing California Supreme Court's views on state sex offender registration requirement as "[f]urther supporting a nonpunitive interpretation of the legislature's intent").

We also think it significant that the Council assigned the work of SORA to an administrative agency. That a statute authorizes an administrative agency to do its work "is prima facie evidence that [the legislature] intended to provide for a civil sanction." *Hudson v. United States*, 522 U.S. 93, 103 (1997); *see also Hinckley*, 550 F.3d at 937 (finding that federal sex offender registration requirement was civil and nonpunitive in part because of its enforcement procedures). That SORA lacks the procedural safeguards normally associated with criminal punishment is further evidence that the Council meant it to be civil. For example, SORA gives to CSOSA the authority to decide whether someone convicted of a sex crime prior to the law's enactment committed a registration offense. D.C. CODE § 22-4004(a). There is a thirty day statute of limitations for judicial review of the agency's decisions, *id.* § 22-4004(a)(2)(B), but no guarantee of court-appointed counsel, *id.* § 22-4004(c)(1). In *Smith*, the statute's use of an administrative agency to implement the registration scheme's "distinctly civil procedures" suggested "that the legislature envisioned the Act's implementation to be civil and administrative," not criminal. 538 U.S. at 96 (internal quotation marks omitted); *see also Helvering v. Mitchell*, 303 U.S. 391, 402 (1938) (concluding that Congress intended to impose a civil penalty in part because "the determination of the facts upon which liability is based may be by an administrative agency instead of a jury"). The same is true here.

The amicus counters that the use of CSOSA makes SORA punitive because the agency is involved with the administration of criminal justice. *Cf. Bailey v. Drexel Furniture Co.*, 259 U.S. 20, 37 (1922) (concluding that statute's purpose was to regulate labor rather than raise revenue in part because it gave inspection authority to the Department of Labor). But the Supreme Court rejected a similar argument in *Smith*, concluding that using a state agency that administers criminal punishment to register sex offenders "does not render the statutory scheme itself punitive." *Smith*, 538 U.S. at 96. Rather, integrating the registration process into the criminal justice system may be nothing more than an effective way to ensure that those required to register receive "[t]imely and adequate notice" of their duties. *Id.* As Anderson's case illustrates, many of those required to register under SORA are already on parole or supervised release. That the Council recognized that these programs would be most efficiently administered by a single agency does not make SORA punitive. *See In re W.M.*, 851 A.2d at 443 ("By virtue of their convictions in Superior Court, sex offenders become subject to SORA's requirements, so it makes sense to coordinate the implementation of SORA with the criminal process.").

Nor do we credit the argument that SORA's placement in Title 22 of the D.C. Code, "Criminal Offenses and Penalties," suggests the Council had punishment in mind. It is true that the manner of codification may be "probative of the legislature's intent," *Smith*, 538 U.S. at 94, but the history of SORA's location in the D.C. Code cuts against this argument. The Council originally codified SORA as part of Title 24 of the D.C. Code, "Prisoners and Their Treatment," which includes numerous nonpunitive provisions. *See, e.g.*, 24 D.C. CODE ch. 5 ("Insane Defendants"); *id.* ch. 6 ("Rehabilitation of Alcoholics"); *id.* ch. 14 ("Delivery of Health Care to

Inmates"). SORA was later moved to Title 22 as part of a "recodification of all the laws of the District of Columbia in 2001 that was carried out not by the Council itself but by its Office of the General Counsel pursuant to a delegation of general authority." *In re W.M.*, 851 A.2d at 442 (citing District of Columbia Official Code, Preface, at VI (2001)). As the D.C. Court of Appeals explained in *In re W.M.*, "this post-enactment administrative decision on which the Council did not even vote . . . says nothing about the intent of the legislature." *Id.* (internal quotation marks omitted).

Finally, the amicus points us to a snippet of legislative history in which a witness urged the Council to pass SORA in view of the need for "[a] comprehensive criminal justice response to sex offenders" that includes "incarceration, treatment, community supervision, and community notification." Hearing on Bill 13-350 Before the Comm. on the Judiciary (D.C. Oct. 14, 1999) (statement of Joyce N. Thomas, President, Center for Child Protection and Family Support). The amicus makes much of the witness's characterization of registration as a "criminal justice response" to sex crimes, but testimony by a witness before the Council reveals little, if anything, about the Council's intent. *See Indep. Bankers Ass'n of Am. v. Farm Credit Admin.*, 164 F.3d 661, 668 (D.C. Cir. 1999) (observing that the testimony of witnesses at congressional hearings "may not reflect [the views] of the legislators who actually voted on the bill"). In any event, not all of the actions the witness suggested were punitive: she also characterized "treatment" as part of a "criminal justice response" even though it is not normally regarded as punishment. *See Allen v. Illinois*, 478 U.S. 364, 373 (1986) (finding that statute was civil and nonpunitive, in part because the statute's purpose was "*treating* rather than punishing sexually dangerous persons by committing them to an institution"). We note that the D.C. Court of Appeals found

what it considered a more reliable measure of the Council's intent in a committee report that stated that "registration and notification are regulatory measures adopted for public safety purposes, and do not constitute criminal punishment." D.C. Comm. on the Judiciary, Report on Bill 13-350, at 6 (1999); *see In re W.M.*, 851 A.2d at 441. SORA's legislative history supports what its structure and text already tell us: the Council intended to create a civil and nonpunitive registration scheme.

B

Having concluded that the Council intended SORA to be civil, we must next determine whether the law is "so punitive either in purpose or effect as to negate" that intent. *Smith*, 538 U.S. at 92 (internal quotation marks omitted). In making this assessment, we consider "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Id.* at 97; *see also Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963). "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 100 (internal citations omitted).

The *Smith* Court considered these factors and concluded that Alaska's sex offender registration requirement was civil and nonpunitive. 538 U.S. at 105-06. The government and the amicus agree—and Anderson does not dispute—that the regulatory scheme at issue here has not been "regarded in our history and traditions as a punishment," and that it "has a rational connection" to the nonpunitive purpose of protecting the public from recitivist sex offenders. *See id.* at 97. This

leaves us to consider SORA's "purpose or effect" in light of the remaining *Smith* factors. The amicus argues that SORA is different and more punitive than the Alaska statute at issue in *Smith* by pointing to three features of SORA that were not present in that case: the requirement that some sex offenders update their registrations in person, D.C. CODE § 22-4007(b); the requirement that sex offenders register in other jurisdictions where they relocate, work, or attend school, *id.* § 22-4014(5); and SORA's "active notification" provision, *id.* § 22-4011(a), (b)(1)(A) (authorizing police to "affirmatively inform[] persons or entities about sex offenders" via "community meetings, flyers, telephone calls, door-to-door contacts, electronic notification, direct mailings, and media releases").

But Anderson lacks standing to challenge SORA's in-person registration requirement because it imposes no additional burden on *him*. One of the conditions of Anderson's parole is that he meet with an officer from CSOSA "at such times and in such a manner as that officer directs." Certificate of Parole for Grant Anderson, General Conditions ¶ 3. The authority SORA gives CSOSA to require Anderson to meet with an agency official is redundant with the agency's power to require him to appear in person as a condition of his parole. Anderson thus lacks an injury that is "fairly traceable" to SORA's in-person registration requirement. *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010). Styling Anderson's argument a facial challenge does not change the result. "The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38 (1999) (internal quotation marks omitted).

The amicus argues that SORA's requirement that sex offenders register in other states where they relocate, work, or go to school, D.C. CODE § 22-4014(5), imposes an "affirmative disability or restraint" that is, by its very nature, punitive, *Smith*, 538 U.S. at 97. But *Smith* makes clear that requiring a sex offender to register in the jurisdiction where he lives "does not restrain activities [he] may pursue but leaves [him] free to change jobs or residences" and is "less harsh than the sanctions of occupational debarment," which the Supreme Court has held to be civil. *Smith*, 538 U.S. at 100. Requiring Anderson to register in states where he is a student or employee imposes no greater burden on him than requiring him to register in the state where he lives. In fact, each requires the same: Anderson must register where he is. Restraints so "minor and indirect" are not punitive. *Smith*, 538 U.S. at 100.

We also do not think this requirement makes SORA "excessive in relation to its regulatory purpose." *Smith*, 538 U.S. at 102. Because the states have "primary responsibility" for tracking sex offenders, the national system of registries is vulnerable to those who would evade registration by moving among jurisdictions. *See Carr v. United States*, 130 S. Ct. 2229, 2238 (2010). SORA's requirement that Anderson register in other jurisdictions is a reasonable response to this problem, and it is not excessive. Federal law and the laws of each of the fifty states impose on Anderson redundant legal obligations to register where he relocates, works, or goes to school, *see, e.g.*, 42 U.S.C. § 16913(a); CAL. PENAL CODE § 290.002; 730 ILL. COMP. STAT. 150/3(a-5); MD. CODE ANN., CRIM. PROC. § 11-704(a)(4); N.J. STAT. ANN. § 2C:7-2(c)(5), (6); VA. CODE ANN. § 9.1-905. This belt-and-suspenders approach makes it less likely that Anderson will be able to avoid registration by moving from one jurisdiction to another.

In a similar vein, we are not persuaded that allowing the police to notify the community of Anderson's status makes SORA "excessive with respect to" its civil and nonpunitive purpose. *Smith*, 538 U.S. at 97. Although we do not doubt that active notification makes SORA more burdensome to sex offenders than the passive notification scheme in *Smith*, "[t]he excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy." *Id.* at 105. Rather, we ask "whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Id.* The effectiveness of registration depends on making vulnerable people aware of the presence of sex offenders in their communities. Empowering the police to engage in active notification where they think appropriate is not excessive in view of this legitimate regulatory goal.

Finally, the amicus argues that SORA promotes the "traditional aims of punishment," *Smith*, 538 U.S. at 97, because it deters crime by requiring that Anderson register in places beyond the District and granting police authority to actively notify the public of his status. But the Supreme Court observed in *Smith* that "[a]ny number of governmental programs might deter crime without imposing punishment." 538 U.S. at 102. Thus, although SORA may deter crime, that is of little moment to the question of whether it is punitive in purpose or effect. *See United States v. Ursery*, 518 U.S. 267, 292 (1996) ("[T]hough . . . statutes may fairly be said to serve the purpose of deterrence, we have long held that this purpose may serve civil as well as criminal goals."); *cf. Hudson*, 522 U.S. at 105 ("To hold that the mere presence of a deterrent purpose renders . . . sanctions 'criminal' for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation . . . ."). More significant to our consideration of whether a regulatory scheme promotes the

traditional aims of punishment is whether it is retributive, *Smith*, 538 U.S. at 102, but SORA exacts no greater retribution than the civil and nonpunitive statute at issue in *Smith*.

Anderson and his amicus have failed to show by "the clearest proof[] that the effects of the law negate [the Council's] intention to establish a civil regulatory scheme." *Smith*, 538 U.S. at 105. Following *Smith*, we conclude that neither the Council's intent nor SORA's effects are so punitive as to render SORA a form of punishment.

## III

We can dispose of Anderson's remaining claims with dispatch. In his complaint, Anderson alleged that the defendants violated the Fifth Amendment by forcing him to "participate in polygraph examinations and psycho-therapy sessions," which he argued "may be used to negate [his] claims of innocence while seeking federal habeas corpus proceedings." Compl. ¶ 12. But apart from this bare assertion, Anderson never explained his claim. His complaint does not say that he was exposed to the threat of incrimination, that he was compelled to testify, or that he asserted his privilege against self-incrimination—all elements he would need to prove for his claim to succeed. *See Minnesota v. Murphy*, 465 U.S. 420, 426 n.7 (1984) (observing that the Fifth Amendment privilege only extends to a probationer if his answer could expose him to additional punishment); *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977) ("[T]he touchstone of the Fifth Amendment is compulsion . . . ."); *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 291 (D.C. Cir. 1983) ("Ordinarily, a person must invoke the privilege in order to gain its advantage."). Without more, the district court correctly concluded that Anderson failed to "show[] that [he] is entitled to relief." FED. R. CIV. PROC. 8(a)(2); *see Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1950 (2009) (instructing that a court should dismiss a complaint "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct").

The amicus recognizes that Anderson failed to state a Fifth Amendment claim, but faults the district court for not explaining the standard for a motion to dismiss to a pro se plaintiff and then urging him to amend his complaint. We are unaware, however, of any authority that requires a district court to go to such lengths, and we decline to extend the district court's responsibility so far in a case in which the pro se plaintiff did not need any such help. Anderson's filings make clear that he understood what is needed to withstand a motion to dismiss. Anderson began his response by citing Federal Rule of Civil Procedure 12(b)(6) and observing that on a motion to dismiss "a court must construe all allegations contained in the complaint in the light most favorable to the plaintiff." Anderson's Response to D.C. Mot. to Dismiss 2, No. 1:09-cv-1197 (D.D.C. Aug. 12, 2009). Anderson's knowledge of hornbook civil procedure is hardly surprising: he is a "prolific filer" who has initiated numerous suits in this circuit and others. *Ibrahim v. District of Columbia*, 208 F.3d 1032, 1032-33 (D.C. Cir. 2000) (describing "Jibril Ibrahim, né Grant Anderson" as a frequent litigant).

Anderson also alleges that SORA denies him "equal protection and treatment of federal law" and "violates the Eighth Amendment." Compl. ¶¶ 1, 16. But Anderson has never explained how SORA runs afoul of either constitutional provision, and the amicus offers no argument on the issue. Anderson's "the-defendant-unlawfully-harmed-me accusation[s]" are not enough to survive a motion to dismiss, *Iqbal*, 129 S. Ct. at 1949, and the district court was correct to reject them, *see Anderson*, 691 F. Supp. 2d at 61-63 & n.5.

With no federal claims remaining in the case, the district court also properly declined to exercise supplemental jurisdiction over Anderson's claim under the D.C. Human Rights Act. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

## IV

The judgment of the district court is

*Affirmed.*