IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2018 Session

## BARRY L. CLARK v. MARK GWYN ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 16-1035-I     Claudia Bonnyman, Chancellor**

_____

### No. M2018-00655-COA-R3-CV

_____

The petitioner was convicted of multiple sexual offenses in Maryland in 1981. Several years after completing his sentence for these convictions, he was incarcerated in Pennsylvania for a different crime. While serving his sentence in Pennsylvania, he received interstate transfer of parole to Tennessee. Thereafter, the petitioner was informed that he must register as a sexual offender in Tennessee. He registered in 2011 and, in 2016, sent the Tennessee Bureau of Investigation ("TBI") a letter requesting termination of his registration. After the TBI denied his request, the petitioner filed a petition for judicial review in the chancery court. The chancery court affirmed the TBI's denial of the petitioner's request, and the petitioner appeals. Finding no error in the chancery court's decision, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Barry L. Clark, Camden, Tennessee, pro se.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, and Robert William Mitchell, Assistant Attorney General, for the appellants, Mark Gwyn, Jeanne H. Broadwell, and Tennessee Bureau of Investigation.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

In 1981, Barry L. Clark was convicted of committing multiple sexual offenses in Maryland, and he received a sentence of fifteen years' imprisonment. The most serious

of his convictions was for "first degree sexual offense," which Maryland law defined as follows:

> A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:
> (1) With another person by force or threat of force against the will and without the consent of the other person, and:
> (i) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or
> (ii) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone else in the course of committing the offense; or
> (iii) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or
> (iv) The person commits the offense aided and abetted by one or more other persons.

Md. Code Ann. Art. 27, § 464(a) (Supp. 1981). "Sexual act" was defined as:

> cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes.

Md. Code Ann. Art. 27, § 461(e) (Supp. 1981).

After Mr. Clark was granted parole in 1988, he relocated to Pennsylvania, where he was convicted of unlawfully possessing a firearm in 2001. Mr. Clark eventually received probation for this conviction. Before completing the probation, however, he moved to Tennessee. Several years later, Mr. Clark learned that a warrant for his arrest had been issued in Pennsylvania in 2003 for violating the terms of his probation. He returned to Pennsylvania in 2010 and pleaded guilty to the probation violation. Following a brief period of confinement, he was granted interstate transfer of parole from Pennsylvania to Tennessee in 2011.

In 1994, more than a decade after Mr. Clark's conviction, the Tennessee General Assembly enacted the Sexual Offender Registration and Monitoring Act ("1994 Act"),

which created a sex offender registry ("SOR") and required persons convicted of certain offenses to register for a ten-year period. *See* 1994 TENN. PUB. ACTS Ch. 976. The General Assembly amended the 1994 Act several times, including an amendment in 2000 that provided for lifetime registration for persons convicted of violent sexual offenses. In 2004, the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 ("2004 Act"), codified at Tenn. Code Ann. §§ 40-39-201 to -218, replaced the 1994 Act. The 2004 Act established certain geographic restrictions on sexual offenders. For instance, Tenn. Code Ann. § 40-39-211(a) prohibits a person classified as a violent sexual offender from knowingly establishing a primary or secondary residence or accepting employment within 1,000 feet of any school, "licensed day care center, other child care facility, public park, playground, recreation center, or public athletic field available for use by the general public." Subsection (d) of that statute prohibits a sexual offender from being upon or remaining upon the premises of the aforementioned places if the offender has reason to believe children under the age of eighteen are present. Tenn. Code Ann. § 40-39-211(d)(1)(A). In addition to the geographic restrictions, the 2004 Act provides for quarterly reporting by individuals classified as violent sexual offenders. Tenn. Code Ann. § 40-39-204(b)(1). Finally, the 2004 Act applies not only to convictions in Tennessee but also to convictions "in any other state of the United States, other jurisdiction or other country." Tenn. Code Ann. § 40-39-202(1).

The language of the 2004 Act indicates that the General Assembly intended for the registration requirements to be applied retroactively to all sexual offenders.[1] *See* Tenn. Code Ann. §§ 40-39-202(20); 40-39-203(a)(2) & (j)(1) & (2); *see also Ward v. State*, 315 S.W.3d 461, 468 (Tenn. 2010). Thus, Mr. Clark was subject to the registration requirements of the 2004 Act when he returned to Tennessee in 2011. The Tennessee Board of Probation and Parole compelled him to register as a sexual offender pursuant to the 2004 Act. Upon Mr. Clark's registration with the SOR, the TBI classified him as a violent sexual offender due to his conviction for "first degree sexual offense." Because "first degree sexual offense" is not identified as a sexual offense in Tennessee, the TBI made its classification determination by examining the elements of a first degree sexual offense in Maryland to determine if they were the same as the elements for a sexual offense identified in Tennessee.[2] *See* Tenn. Code Ann. § 40-39-207(g)(2)(B) (stating

---

[1] Because the 2004 Act in its present form applies to Mr. Clark, we apply and construe the 2004 Act as it is currently written rather than the version in effect when he moved to Tennessee or when he initiated this case. *See Ward v. State*, 315 S.W.3d 461, 468 (Tenn. 2010).

[2] Counsel for the TBI submitted an affidavit describing how she researched Md. Code Ann. Art. 27, § 464(a), and how she compared it to Tennessee law. She stated that because, "Westlaw's historical statutes for Maryland only date back to 2001," she researched Maryland cases "involving that code section around the time of Mr. Clark's conviction" and found a definition of Md. Code Ann. Art. 27, § 464(a) in a case from 1984. This court finds it troubling that counsel was satisfied relying on a definition of the statute from "around the time of Mr. Clark's conviction." Although research databases such as Westlaw have made it easier for lawyers to conduct legal research, these databases provide little

- 3 -

"[i]f an offense in a jurisdiction other than this state is not identified as a sexual offense in this state, it shall be considered a prior conviction if the elements of the offense are the same as the elements for a sexual offense"). The TBI determined that, if a first degree sexual offense, as defined by Maryland law, had been committed in Tennessee, it would have constituted "rape,"[3] which Tenn. Code Ann. § 40-39-202(31)(B) identifies as a "violent sexual offense."

On September 12, 2016, Mr. Clark contacted the TBI requesting that he be removed from the SOR. The TBI issued a letter to Mr. Clark denying his request after concluding that he was not eligible for removal from the SOR. The letter stated that his Maryland conviction of first degree sexual offense "is considered a sexually violent offense" in Tennessee and that a person convicted of a sexually violent offense "shall continue to comply with the registration and quarterly monitoring requirements for the life of that person." Mr. Clark then filed a petition for judicial review of the TBI's decision in the Chancery Court for Davidson County, asserting that he should not have to register and that his name should be removed from the SOR. He contended that the classification, registration, and reporting requirements and the work and residential restrictions imposed by the 2004 Act, as applied to him, violated the ex post facto provisions of the federal and state constitutions.

Following a hearing on February 6, 2018, the chancery court entered a memorandum and order on April 6, 2018, affirming the TBI's denial of Mr. Clark's request for removal from the SOR. The court found that there was substantial and material evidence to support the TBI's decision and that the 2004 Act, as applied to Mr. Clark, did not constitute an ex post facto law that inflicted an unlawful punishment upon him. Mr. Clark timely appealed.

---

assistance when researching older statutes like the one in this case. These databases are not the only methods available for researching older statutes, however. After making a five-minute telephone call to the law library at Maryland State University, this court received scans of the version of Md. Code Ann. Art. 27, § 464(a) in effect when Mr. Clark was convicted in 1981. Fortunately, the statute was not amended between 1981 and 1984.

[3] Tennessee Code Annotated section 39-13-503(a) defines "rape" as follows:

> Rape is unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:
> (1) Force or coercion is used to accomplish the act;
> (2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent;
> (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or
> (4) The sexual penetration is accomplished by fraud.

STANDARD OF REVIEW

The Uniform Administrative Procedures Act ("UAPA"), Tenn. Code Ann. §§ 4-5-101 to -325, governs judicial review of a TBI decision denying a request for termination of registration requirements. *See Miller v. Gywn*, No. E2017-00784-COA-R3-CV, 2018 WL 2332050, at *2 (Tenn. Ct. App. May 23, 2018). Under the UAPA, "[t]he reviewing court's standard of review is narrow and deferential." *StarLink Logistics Inc. v. ACC, LLC,* 494 S.W.3d 659, 668 (Tenn. 2016). The UAPA limits reversal or modification of an agency's decision to situations where the decision is:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
    (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

This standard of review is narrower than what is generally applied in other appeals because it "reflects the general principle that courts should defer to decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise." *StarLink Logistics Inc.*, 494 S.W.3d at 669. As a result, a reviewing court does not review an agency's factual findings de novo or "second-guess the agency as to the weight of the evidence" even when "the evidence could support a different result." *Id.* Rather, we review an agency's factual findings to determine whether they are supported by substantial and material evidence in the record. Tenn. Code Ann. § 4-5-322(h)(5); *see also Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 508 (Tenn. Ct. App. 2009).

Tennessee Code Annotated section 4-5-322(h) does not define "substantial and material evidence," but Tennessee courts have described it as "less than a preponderance of the evidence and more than a 'scintilla or glimmer' of evidence." *StarLink Logistics Inc.*, 494 S.W.3d at 669 (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). It is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Macon*, 309 S.W.3d at 508 (quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542,

at *7 (Tenn. Ct. App. Aug. 24, 2005)). Trial and appellate courts apply the same narrow standard of review to administrative decisions. *StarLink Logistics Inc.*, 494 S.W.3d at 669*; see also Nix v. Tenn. Civil Serv. Comm'n*, No. M2013-00505-COA-R3-CV, 2014 WL 356979, at *3 (Tenn. Ct. App. Jan. 30, 2014).

ANALYSIS

As a preliminary matter, we note that Mr. Clark is a pro se litigant. This court has stated the following principles about pro se litigants:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003). Additionally, we allow pro se litigants some latitude in preparing their briefs and endeavor to "give effect to the substance, rather than the form or terminology," of their court filings. *Young*, 130 S.W.3d at 63.

I. Ex Post Facto Argument.

Mr. Clark asserts that the 2004 Act, as applied to him, violates the ex post facto provisions of both the United States Constitution and the Tennessee Constitution. *See* U.S. Const. art. I, § 10, cl. 1; Tenn. Const. art. I, § 11. Specifically, he challenges the classification, registration, and reporting requirements of the 2004 Act. He also challenges the restraints on his freedom to live and work wherever he chooses. To constitute an ex post facto prohibition, "a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' . . . by altering the definition of criminal conduct or increasing the punishment for the crime . . . ." *State v. Pruitt*, 510 S.W.3d 398, 416-17 (Tenn. 2016) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)). A party may assert two types of constitutional challenges: facial challenges and "as applied" challenges. *Waters v. Farr*, 291 S.W.3d 873, 921 (Tenn. 2009). "A facial challenge to a statute involves a claim that the statute fails an applicable constitutional test and should be found invalid in all applications." *Id.* An "as applied" challenge, like the one asserted here, "presumes that the statute is generally valid" and "merely asserts that specific applications of the statute

are unconstitutional." *Id.* at 923. To prevail, Mr. Clark must "demonstrate that the statute operates unconstitutionally when applied to [his] particular circumstances." *Id.*

The United States Supreme Court considered an "as applied" ex post facto challenge to Alaska's SOR act in *Smith v. Doe*, 538 U.S. 84 (2003). The Court formulated the following two-prong test for analyzing the issue:

> We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Ibid.* (quoting *United States v. Ward,* 448 U.S. 242, 248-249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Because we "ordinarily defer to the legislature's stated intent," *Hendricks, supra,* at 361, 117 S.Ct. 2072, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Hudson v. United States,* 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (quoting *Ward, supra,* at 249, 100 S.Ct. 2636); *see also Hendricks, supra,* at 361, 117 S.Ct. 2072; *United States v. Ursery,* 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 365, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).

*Smith*, 538 U.S. at 92. After applying this test to Alaska's SOR act, the United States Supreme Court concluded that the act did not violate the ex post facto provision of the United States Constitution. *Id.* at 105-06. The Tennessee Supreme Court has held that the Tennessee Constitution provides the same ex post facto prohibitions that the United States Constitution provides. *See Pruitt*, 510 S.W.3d at 416. Thus, the two-prong test articulated in *Smith* also applies to ex post facto challenges under the Tennessee Constitution.

A. Whether the legislature intended to establish civil proceedings.

Under the first prong of the test, several courts have already interpreted the 2004 Act and determined that it was not the intention of the General Assembly to impose punishment. In fact, the Tennessee Supreme Court has specifically held that "the registration requirements imposed by the sex offender registration act are nonpunitive." *Ward*, 315 S.W.3d at 472. This holding is consistent with the General Assembly's express intent found in Tenn. Code Ann. § 40-39-201(b), which provides, in pertinent part:

(1) . . . Sexual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment and protection of the public from these offenders is of paramount public interest;

(2) It is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses collected pursuant to this part, to allow members of the public to adequately protect themselves and their children from these persons;

(3) Persons convicted of these sexual offenses have a reduced expectation of privacy because of the public's interest in public safety;

(4) In balancing the sexual offender's and violent sexual offender's due process and other rights against the interests of public security, the general assembly finds that releasing information about offenders under the circumstances specified in this part will further the primary governmental interest of protecting vulnerable populations from potential harm;

. . . .

(6) To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. This policy of authorizing the release of necessary and relevant information about offenders to members of the general public is a means of assuring public protection and *shall not be construed as punitive*;

. . . .

(8) The general assembly also declares, however, that in making information about certain offenders available to the public, *the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders*.

(Emphasis added). Thus, it is evident that the General Assembly intended to create a civil, nonpunitive regime.

B. Whether the 2004 Act, as applied to Mr. Clark, is punitive in effect.

Having determined that the General Assembly did not intend for the 2004 Act to inflict punishment, we proceed to the second prong of the test: whether the specific provisions are "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Smith*, 538 U.S. at 92 (quoting *Ward*, 448 U.S. at 248-49). When determining whether a law has a punitive effect, the United States Supreme Court directs courts to use the following factors:

[W]hether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of

punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

*Id.* at 97.

We note that the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, the Tennessee Court of Appeals, and the Tennessee Court of Criminal Appeals have already applied the second prong of this test to Tennessee's SOR laws and have consistently upheld them against ex post facto challenges. *Ward*, 315 S.W. 3d at 472; *Doe v. Cooper,* No. M2009-00915-COA-R3-CV, 2010 WL 2730583, at *7 (Tenn. Ct. App. July 9, 2010) (citing *Smith v. Doe*, 538 U.S. 84 (2003); *Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1 (2003); *Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir. 1999); *Doe v. Bredesen,* No. 3:04-CV-566, 2006 WL 849849 (E.D. Tenn. Mar. 28, 2006), *aff'd* 507 F.3d 998 (6th Cir. 2007), *cert. denied,* 555 U.S. 921 (2008); *Strain v. Tenn. Bureau of Investigation,* No. M2007-01621-COA-R3-CV, 2009 WL 137210 (Tenn. Ct. App. Jan. 20, 2009); *State v. Gibson,* No. E2003-02102-CCA-R3-CD, 2004 WL 2827000 (Tenn. Crim. App. Dec. 9, 2004)). In fact, "[t]o date, every *ex post facto* challenge of Tennessee's statutory scheme requiring persons classified as sexual offenders to register with the TBI sex offender registry has been rejected." *Id.*

The classification, registration, and reporting provisions of the 2004 Act were before the federal Eastern District Court of Tennessee in *Doe v. Bredesen*, 2006 WL 849849, at *7. After determining that the General Assembly "intended to implement a civil regulatory scheme, not one of punishment," the court went on to apply the second prong of the test and concluded that "[t]he classification of sexual offenders under the Act is part of a nonpunitive regulatory framework." *Bredesen*, 2006 WL 849849, at *7, *10. Of particular importance to the present case, the court noted that, under the 2004 Act:

> John Doe's federal conviction remains the same, and his punishment for the crime did not change. What did change is the classification of that crime within a nonpunitive regulatory scheme designed to address the danger of recidivism and to protect the health and safety of the public. John Doe's reclassification within the Act's framework is not punishment; rather it is a function of a changing and evolving regulatory scheme that applies to him because of the particular crime he committed. "The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103, 123 S.Ct. at 1153.

*Id.* at *10.

To support his argument that the specific provisions of the 2004 Act are punitive in effect, as applied to him, Mr. Clark relies almost exclusively on *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016). In *Snyder*, the plaintiffs challenged Michigan's SOR act under multiple legal theories including that the act, as retroactively applied to them, was punitive in effect and violated the ex post facto provision of the federal constitution. *Snyder*, 834 F.3d at 698. The Michigan act, like the Tennessee act, included a provision prohibiting sexual offenders from living or working within 1,000 feet of a school. *Id.* The plaintiffs presented maps, data, and expert testimony demonstrating that this restriction was "very burdensome, especially in densely populated areas." *Id.* at 701. For instance, they were "forced to tailor much of their lives around these school zones," and "they often ha[d] great difficulty in finding a place where they may legally live or work." *Id.* 702. The plaintiffs also presented evidence that Michigan's act had little impact on recidivism rates. *Id.* at 704-05.

Based on this evidence, the *Snyder* court concluded that Michigan's act was punitive in effect and violated the ex post facto provision of the federal constitution. *Id.* 705-06. The court stated:

> A regulatory regime that severely restricts where people can live, work and "loiter," that categorizes them into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting, all supported by—at best—scant evidence that such restrictions serve the professed purpose of keeping Michigan communities safe, is something altogether different from and more troubling than Alaska's first-generation registry law. [The Michigan act] brands registrants as moral lepers solely on the basis of a prior conviction. It consigns them to years, if not a lifetime, of existence on the margins, not only of society, but often, as the record in this case makes painfully evident, from their own families, with whom, due to school zone restrictions, they may not even live. It directly regulates where registrants may go in their daily lives and compels them to interrupt those lives with great frequency in order to appear in person before law enforcement to report even minor changes to their information.

> We conclude that Michigan's [act] imposes punishment. And while many (certainly not all) sex offenses involve abominable, almost unspeakable, conduct that deserves severe legal penalties, punishment may never be retroactively imposed or increased.

*Id.* 705.

Although we recognize that the *Snyder* decision is worthy of examination, Mr. Clark's reliance on it is misplaced. As a decision of the Court of Appeals for the Sixth

Circuit, it is merely persuasive authority; we are not bound by its ruling. *See Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 713 n.8 (Tenn. 2017) (noting that we are "'not bound by decisions of the federal district and circuit courts. We are bound only by decisions of the United States Supreme Court.'") (quoting *State v. Carruthers*, 35 S.W.3d 516, 561 n.45 (Tenn. 2000)). Moreover, Mr. Clark is challenging Tennessee's SOR act, not Michigan's SOR act. That means he must demonstrate by the "clearest proof" that the challenged provisions of the 2004 Act, as applied to him, are so punitive in effect that they constitute punishment in violation of the ex post facto provisions of the federal and state constitutions. *See Smith*, 538 U.S. at 92. In other words, he must show how his circumstances under the 2004 Act constitute impermissible punishment. The *Snyder* court's findings with regard to the plaintiffs' circumstances under Michigan's SOR act demonstrate how those particular plaintiffs were impermissibly punished by Michigan's act. They do not demonstrate that Mr. Clark was impermissibly punished by the 2004 Act.

An examination of the record shows that, unlike the plaintiffs in *Snyder*, Mr. Clark presented little evidence of how the 2004 Act punished him. For instance, the record contains no evidence that Mr. Clark was unable to find a home or a job due to the 2004 Act's restrictions on where registrants may live and work. In fact, he stated that he managed to find housing and that he was a published author. Mr. Clark asserts that the 2004 Act had a punitive effect on him as a published author because he was unable to consider "publishing in print" due to the 2004 Act's prohibition of access to libraries. Although Mr. Clark is correct that Tenn. Code Ann. § 40-39-216(a) provides that "[p]ublic library boards shall have the authority to reasonably restrict the access of any person listed on the sexual offender registry," he failed to present proof that any libraries actually restricted his access. Moreover, he presented no evidence that this restriction or any other restriction prevented him from publishing in print or obtaining a job.

In its April 6, 2018 memorandum and order, the chancery court stated that Mr. Clark presented "some legal articles and academic studies on the effects of recidivism rates with relation to sex offender registration laws." These articles and academic studies were documents the *Snyder* court considered when making its decision. When Mr. Clark introduced these documents at trial, he explained that he was introducing them because he wanted the chancery court "to review the same information the Sixth Circuit reviewed in order to come to their decision." After considering this evidence, the chancery court concluded that it "was inconclusive as to whether Tennessee's laws were in effect punitive." The record on appeal does not contain these documents, but we do not find their absence fatal to our review of the issue. As discussed above, evidence demonstrating that Michigan's SOR laws were punitive in effect does not satisfy Mr. Clark's burden of proving by "the clearest proof" that Tennessee's SOR laws, as applied to him, are punitive in effect.

Finally, Mr. Clark presented a 2007 recidivism study issued by the TBI. This study examined 1,116 male offenders who were released in 2001 over a three-year period. Of the offenders studied, 557 had committed a crime involving a sexual component and 559 of them had committed nonsexual felonies. According to this study, those who had committed sexual offenses had a lower recidivism rate than those who had committed nonsexual felonies. We, like the chancery court, conclude that this evidence is inconclusive as to whether Tennessee's SOR laws were punitive in effect. As the TBI pointed out to the chancery court, there had been SOR laws in effect in Tennessee for thirteen years at the time this recidivism study was released. The lower recidivism rates could have been due to the effectiveness of Tennessee's SOR laws rather than due to sexual offenders not posing a high risk of reoffending. Without additional studies or expert testimony concerning this issue, we cannot conclude that significant doubt has been cast on the General Assembly's pronouncement that "[s]exual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment . . . ." Tenn. Code Ann. § 40-39-201(b)(1). The meager evidence presented by Mr. Clark falls short of the "clearest proof" required to demonstrate that the 2004 Act, as applied to him, imposed an impermissible punishment.

In light of the foregoing, we conclude that the chancery court did not err in finding that the challenged provisions of the 2004 Act did not violate the ex post facto clauses of the federal and state constitutions.

II. Additional Constitutional Challenges.

Although not clearly articulated in his appellate brief, it appears that Mr. Clark also asserts vagueness, First Amendment, and due process challenges to the 2004 Act. Specifically, he asserts that the geographic restrictions in the 2004 Act are vague because property lines are not clearly marked and that they violate the First Amendment because they prevent him from gathering with others in a public library or public park. He also asserts that he was denied due process because he was not informed that he would have to register pursuant to the 2004 Act before he accepted interstate transfer of parole.

It is well-settled in Tennessee that "'[a]n issue not raised nor considered in the trial court but raised for the first time on appeal will not be considered by this Court.'" *Denver Area Meat Cutters & Emp'rs Pension Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006) (quoting *Hobson v. First State Bank*, 801 S.W.2d 807, 812 (Tenn. Ct. App. 1990)). Here, a thorough examination of the record shows that Mr. Clark did not raise his vagueness or First Amendment challenges in the chancery court. Accordingly, we conclude that these issues are waived.

Mr. Clark initially raised his due process claim in the complaint he filed in the chancery court. In his complaint, he contended that the Tennessee Board of Probation and Parole failed to notify him "that should [he] accept interstate transfer of parole to

Tennessee [he] would be required to register as a sex offender." He later filed a supporting brief expressly abandoning this claim "so that a full examination of [the ex post facto challenge]" could occur. Despite abandoning the due process claim in his supporting brief, however, he presented argument at the February 6, 2018 hearing concerning due process. He stated, in pertinent part, as follows:

> THE COURT: Did you say that there was a denial of due process because you didn't get notice of something?
> MR. CLARK: Yes. . . . the interstate transfer of parole from Pennsylvania to Tennessee, which is parole for a probation violation, required that there be vetting by the Interstate Compact Agency, a person assigned from Tennessee to that, as well as the person from the Tennessee Board of Parole and Probation assigned to investigate before interstate transfer of [parole] is permitted, allowed.
> During that vetting, during this process, no one from Maryland or Tennessee notified me that if I chose to accept interstate transfer of parole, I would be subject to register with Tennessee on the sex offender registry.

In its memorandum and order, the chancery court declined to consider Mr. Clark's due process claims because "he did not brief his due process claims, and they appear to be directed to the Tennessee Board of Parole, and not the [TBI]." It is clear from Mr. Clark's complaint and his statements at the February 6, 2018 hearing that his due process claims were directed at the Tennessee Board of Probation and Parole, not at the TBI. He did not identify the Tennessee Board of Probation and Parole as a defendant in this case. Thus, the chancery court properly declined to consider Mr. Clark's due process claim, and we will not consider it here.

Due to the foregoing reasons, we conclude that the chancery court did not err in affirming the TBI's denial of Mr. Clark's request to have his registration requirements terminated.

CONCLUSION

The judgment of the chancery court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Barry L. Clark, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE